UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                          Case Number 24-20520

v.                                            Honorable David M. Lawson

USMAN AHMAD,

                    Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO SUPPRESS

Defendant Usman Ahmad, a licensed pharmacist, is charged in a second superseding indictment with participating in a scheme to distribute controlled substances by procuring and filling prescriptions that were issued for no valid medical purpose. When Ahmad was arrested, government agents questioned him and obtained his cell phone passcode without first administering *Miranda* warnings. Ahmad moves to suppress all the evidence obtained from his cell phone, contending that it was obtained in violation of the Fifth Amendment. The Court held an evidentiary hearing at which a government cell phone data extraction expert testified about the typical process used to extract data from cell phones. Based on that testimony, the conclusion is inescapable that despite the alleged constitutional violation, the data inevitably would have been obtained. Therefore, the exclusionary rule will not preclude the government's use of the evidence at trial, and the motion to suppress will be denied.

I.

On June 18, 2025, the grand jury charged defendant Usman Ahmad in a second superseding indictment along with 12 co-defendants with conspiring to distribute controlled substances illegally. Ahmad allegedly was a licensed pharmacist and owner of the Detroit Hoover Pharmacy in Detroit, Michigan. Ahmad allegedly conspired with several other co-defendants, some who are

identified as physicians and others who are facilitators of the scheme.  The government contends that patients were solicited to visit doctors who issued medically unnecessary prescriptions for controlled substances, which were filled by Ahmad's pharmacy, and after which the drugs were conveyed for illegal resale by street vendors.  The "pill mill" operation outlined in the indictment allegedly operated from June 2021 through September 2024 and accounted for the illegal distribution of more than 1.9 million dosage units (worth approximately $28 million) of Oxycodone, Hydrocodone, and other opioid medications.

Federal agents arrested Ahmad in his home on June 24, 2025.  The agents entered his home with weapons drawn and they performed a security sweep.  Ahmad was handcuffed and his movements were monitored during the search of the home.

The agents had in hand a search warrant for Ahmad's cell phone and its contents, and an arrest warrant for him.  When the agents seized the phone, they could not access the data without a passcode.  So they questioned Ahmad and asked him to provide his passcode, which he did.  An agent then was able to unlock the phone. However, before demanding the passcode, none of the agents advised Ahmad of his right to remain silent, his right to an attorney during questioning, or that his statements could be used against him.

At the evidentiary hearing, Joshua Wrobel testified that he is a general investigator with the Department of Health and Human Services specializing in forensic digital evidence.  After providing background testimony about the procedures generally followed to extract data from seized cell phones, Wrobel testified that the Samsung Galaxy S23 Ultra phone in question is "fully supported" by the GrayKey forensic software that the government used in this case, meaning that if a biometric unlock or known PIN code were not available, then the phone data still could have been accessed using the GrayKey software by means of a "brute force" attack, which would simply

attempt to access the data using every potential PIN combination until the correct combination was found.  Hrg. Tr., ECF No. 357, PageID.1330.  Wrobel explained that this brute force attack would not be prevented by security measures inherent in the particular Samsung phone in question, compared with other models, such as the Apple iPhone, which feature hardware measures that could prevent such attacks.  *Id.* at 1338 ("THE COURT: Well, how does brute force avoid that consequence [making the phone inaccessible]? THE WITNESS: If a human were to try to put [too many incorrect PIN codes] in on the phone themselves — I believe the number on iPhone is ten, and I don't know what the number is on the Android — the phone would wipe. GrayKey has some mechanism that's internal and a trade secret, to my knowledge, that they get around that [with the Samsung phone]. They circumvent that security measure somehow.").

Wrobel testified that he has used this software to obtain data from cell phones in about 20 other cases.  When accessed, the phones generally are put in airplane mode to prevent remote access that could trigger data alteration or deletion.  If the phone cannot be accessed immediately and put in airplane mode, it is stored in a Faraday Bag — a specialized pouch lined with conductive materials that block electromagnetic signals — to protect against remote data compromise.  None of that was necessary here, however, because the agents obtained the passcode from Ahmad immediately after seizing the phone.

## II.

In his motion to suppress the contents of the cell phone, Ahmad argues that government agents unlawfully demanded that he give them the passcode for the phone before he was advised of and validly waived his right to remain silent under the Fifth Amendment, and that his response supplying the passcode was a self-incriminating statement obtained in violation of his *Miranda* rights.  Defendant acknowledges that agents already had in their possession a warrant to search the

phone, along with a warrant for defendant's arrest, and he does not challenge the propriety of either. But he argues, nevertheless, that the evidence must be suppressed because the demand for a password was "interrogation," and it is undisputed that defendant was "in custody" at the time.

The government disputes that any constitutional violation occurred, since the agents were authorized to search the phone by a valid search warrant, which specifically authorized them to manipulate any person's fingers or present their face to the device in order to unlock it. The government points out that the phone was first unlocked by pressing the defendant's finger to a scanner on the device (a technique authorized by the search warrant), and agents only asked the defendant for the passcode after the phone "reengaged" its lock feature following the initial unlock. The government also maintains that even if evidence from the phone was obtained via a Fifth Amendment violation, the contents of the phone should not be suppressed because they would have been discovered inevitably during execution of the valid and unchallenged search warrant, which likely would have succeeded even in the absence of the passcode through use of utilities that allow brute force decryption of cell phone data, such as "Graykey," which the government routinely uses to obtain cell phone forensics. The second argument is dispositive of the present motion.

"The exclusionary rule prohibits introduction of evidence directly acquired by an unlawful search or seizure, as well as 'derivative evidence, both tangible and testimonial, that is the product of the primary evidence.'" *United States v. Cooper*, 24 F.4th 1086, 1092 (6th Cir. 2022) (citing *Murray v. United States*, 487 U.S. 533, 536-37 (1988)). However, "[u]nder the inevitable discovery doctrine, if the evidence would have been lawfully discovered without the unconstitutional source, then it should be admitted." *Ibid.* "That test necessarily involves some hypothesizing. [The Court] must ask: '[V]iewing affairs as they existed at the instant before the

- 4 -

unlawful search, what would have happened had the unlawful search never occurred[?]'" *Ibid.* (quoting *United States v. Kennedy*, 61 F.3d 494, 498 (6th Cir. 1995)).

Here, it is undisputed that an (unchallenged) warrant authorizing the seizure and search of the defendant's cell phone was in the agents' possession before the phone was accessed using the allegedly illegally obtained passcode. Based on the evidence received during the evidentiary hearing, the Court finds that the government has established by a preponderance of the evidence that, even if Ahmad had not responded to the agents' demand for the passcode, the agents would have been able to access the device and obtain its contents. "[E]vidence gleaned from unconstitutional searches will not be suppressed if it would have been discovered anyway." *United States v. Stevens*, No. 21-4065, 2022 WL 11684811, at *3 (6th Cir. Oct. 20, 2022) (citing *Utah v. Strieff*, 579 U.S. 232, 238 (2016)).

"[T]he inevitable discovery exception applies when, at the time of the unlawful search, there was a separate independent line of investigation underway or there are compelling facts indicating that the disputed evidence would have inevitably been discovered, such as proof that the evidence would have been found in an inventory search that would inevitably follow seizure of a car." *Kennedy*, 61 F.3d at 498 (citing *United States v. Johnson*, 22 F.3d 674, 684 (6th Cir. 1994); *United States v. Buchanan*, 904 F.2d 349, 356-57 (6th Cir. 1990)). Here, it is undisputed that a search warrant covering the cell phone was in hand when the phone was seized and accessed by agents. Where a valid warrant is issued covering the evidence in question, the inevitable discovery exception has been held to apply even where a warrant has been applied for beforehand, but a questionable seizure occurs in the interim before a warrant is issued by the magistrate. *United States v. Odubajo*, No. 23-3654, 2024 WL 4368079, at *3 (6th Cir. June 12, 2024), *cert. denied*,

145 S. Ct. 559 (2024) ("At a minimum, the discovery of the fentanyl was inevitable, considering the warrant was received less than an hour later.") (citing *Kennedy*, 61 F.3d at 497-501).

The government asserts that it fully expected to be able to break the encryption on the phone using its "Graykey" software cracking package, which forensic investigator Wrobel explained supports the Samsung phone model in question, and which typically has a high success rate retrieving data from locked phones by use of "brute force" algorithms designed to circumvent device access restrictions.  The government has put forth compelling and undisputed evidence indicating that the contents of the phone would have been retrieved inevitably during execution of the search warrant.  On similar facts, other circuits have found that discovery via execution of a valid warrant was inevitable based on testimony by government agents that brute force cracking techniques would have obtained access to the device even without an allegedly illegally obtained passcode.  *E.g.*, *United States v. Salas*, 106 F.4th 1050, 1061 (10th Cir. 2024) ("[A]lthough the iPhone was initially locked, Forness testified that it would have been 'just a matter of time' before he could 'brute-force' his way in.  He ultimately did not have to do so because, by happenstance, the iPhone's passcode was found on another of Mr. Salas's devices, his Sony laptop.  However, because it is unclear whether that laptop was seized pursuant to the (valid) First or (invalid) Second Warrant, our analysis is whether, absent that laptop, Forness could have accessed the iPhone.  Ostensibly that answer is yes, Forness would have eventually broken through the iPhone's lock and accessed its contents.  Thus, Mr. Salas's child pornography would not have indefinitely stayed hidden behind his iPhone's locked passcode.  It would have inevitably been discovered.").

The same reasoning applies here.

III.

Because the contents of the cell phone inevitably would have been discovered through the execution of the valid search warrant, the other arguments presented by the defendant are immaterial to resolution of the motion to suppress.

Accordingly, the motion to suppress the contents of the defendant's cell phone (ECF No. 310) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   April 22, 2026